[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15101
Non-Argument Calendar

_____

D. C. Docket No. 8:10-cr-00100-JSM-MAP-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID LOPEZ MENDEZ,

Defendant-Appellant.

_____

No. 10-15175
Non-Argument Calendar

_____

D.C. Docket No. 8:10-cr-00100-JSM-MAP-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR MANUEL BALLESTERO LINARES,

Defendant-Appellant.

_____

No. 10-15176
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cr-00100-JSM-MAP-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWIL DIEGO NAVAS CARCAMO,

Defendant-Appellant.

_____

No. 10-15177
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cr-00100-JSM-MAP-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDGARDO EUDORO EVERETH OCAMPO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(September 21, 2012)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

David Lopez Mendez appeals his convictions and concurrent 151-month sentences, Victor Ballestero Linares appeals his concurrent 188-month sentences, Edwil Navas Carcamo appeals his convictions and concurrent 151-month sentences, and Edgardo Evereth Ocampo appeals his convictions, for (1) conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine while on board a vessel subject to United States jurisdiction with persons "known and unknown" and starting on an "unknown date," in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) ("Count 1"); and (2) aiding and abetting possession with intent to distribute 5 or more kilograms of cocaine while on board a vessel subject to United States jurisdiction, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a), 18 U.S.C. § 2, and 21 U.S.C.

3

§ 960(b)(1)(B)(ii) ("Count 2").  All four defendants were tried in a joint trial, and they were held accountable for 1,500 kilograms of cocaine, which was the amount seized from the vessel.

## I.

Mendez and Carcamo argue that the district court erred during voir dire in failing to ask proposed questions regarding the jurors' opinions about the government engaging in maritime seizures, the defendants being Honduran, the defendants not having the burden of proof, and the defendants having the right to remain silent and not testify.

We review a district court's conduct of voir dire for abuse of discretion. United States v. Vera, 701 F.2d 1349, 1355 (11th Cir. 1983).  The court's discretion includes whether to submit a party's proposed questions to the venire. United States v. Tegzes, 715 F.2d 505, 507 (11th Cir. 1983).

"The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors." Murphy v. Florida, 421 U.S. 794, 799, 95 S. Ct. 2031, 2036 (1975) (quotations omitted).  To this effect, voir dire plays a critical function because without adequate voir dire, the trial court will be unable to effectively remove jurors who are unable to act impartially, and the defendant

4

will be unable to effectively challenge jurors. Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S. Ct. 1629, 1634 (1981).

"The purpose of voir dire is to enable the defendant to evaluate the prospective jurors and select a fair and impartial jury." Vera, 701 F.2d at 1355. Because a "juror is poorly placed to make a determination as to his own impartiality," it is up to the trial court to make that determination. United States v. Hawkins, 658 F.2d 279, 285 (5th Cir. 1981) (quotation omitted). The proper inquiry is "whether the district judge's overall examination, coupled with his charge to the jury, affords a party the protection sought." Tegzes, 715 F.2d at 507 (quotation omitted). A district court does not abuse its discretion unless it fails to reasonably assure that prejudice would be discovered if present. Id.; see also United States v. Brunty, 701 F.2d 1375, 1378-79 (11th Cir. 1983) (holding that the district court did not abuse its discretion because it asked voir dire questions that "adequately covered those matters which the defendant had a legitimate interest in bringing out").

Despite the assertions of Mendez and Carcamo, the district court did question the jurors regarding the defendants' Honduran nationality and the fact that the defendants did not have the burden to prove anything at trial. Furthermore, with regard to maritime seizures, the record shows that the court

5

comprehensively questioned the prospective jurors about potential bias, which allowed Mendez and Carcamo sufficient information upon which to base their juror challenges. In addition, the court specifically instructed the jury at trial that the defendants had a right not to testify, and that it could not consider their choice to invoke that right as evidence against them. See United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005) ("A jury is presumed to follow the instructions given to it by the district judge."). Thus, the court did not abuse its discretion in refusing to ask the proposed voir dire questions.

II.

Mendez, Linares, and Carcamo assert that the district court erred in finding that they were not eligible for a reduction under U.S.S.G. § 3B1.2(b) based on their minor role in the offense on the ground that each crew member aboard the vessel was equally culpable.

A district court's determination of a defendant's role in the offense is a factual finding to be reviewed for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). When the district court's decision is supported by the record and is not a misapplication of the Guidelines, we rarely conclude that the determination was clearly erroneous. Id. at 945. The party

seeking the minor-role adjustment "bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." Id. at 939.

If the defendant was a "minor participant" in any criminal activity, his offense level is reduced by two levels. U.S.S.G. § 3B1.2(b) (2009). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." Id. § 3B1.2, comment. (n.5).

In determining whether a mitigating-role adjustment applies, the district court should consider two principles: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." De Varon, 175 F.3d at 940. As to the first prong of this analysis, the court must assess the defendant's role in relation to all of the relevant conduct that was attributed to him under § 1B1.3, as the broad scope of that section may cause some defendants to be held accountable for conduct that is much broader than their specific acts. Id. at 940-41. "Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." Id. at 944.

7

Under U.S.S.G. § 1B1.3, a defendant's relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (2009). Because this is a broad definition, we have noted that a defendant can be held accountable for conduct that is broader than his specific acts. De Varon, 175 F.3d at 941. We noted that a conspiracy is such an example because the defendant's relevant conduct can include the entire conspiracy even though his role in the conspiracy was minor. Id. However, the defendant must show that his role was minor, and he cannot make this showing when his conduct was more serious than suggested by his base-offense level, or when the relevant conduct attributed to him is identical to his actual conduct. Id.

In the drug courier context, the amount of drugs is relevant and may indicate the extent of the defendant's participation in the criminal enterprise. Id. at 943. In addition, we have held that, when a defendant is held accountable only for the drugs he admitted to conspiring to transport, the district court did not clearly err in refusing to grant a minor-role reduction. United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006) (per curiam). On the other hand, a district court is not precluded from granting a minor-role adjustment when the defendant is held accountable only for the drugs he personally transported. U.S.S.G. § 3B1.2,

8

comment. (n.3(A)) (2009).

Under the second prong of the analysis, the court should compare the defendant to the other participants only to the extent that the others (1) "are identifiable or discernable from the evidence," and (2) "were involved in the relevant conduct attributed to the defendant." De Varon, 175 F.3d at 944. The defendant must show that he "was less culpable than most other participants in [his] relevant conduct" in order to receive a minor-role reduction. Id. (quotation omitted) (emphasis in original).

We conclude that the district court did not clearly err in refusing to grant the minor-role reduction. The defendants were not held accountable for a larger amount of cocaine than they personally transported. See Alvarez-Coria, 447 F.3d at 1343; De Varon, 175 F.3d at 941. Furthermore, none of the defendants demonstrated, by a preponderance of the evidence, that he played a mitigating role in the offense and was less culpable than most other participants in the relevant conduct attributed to him. See De Varon, 175 F.3d at 939, 944. Under these circumstances, we do not find clear error in the court's refusal to grant a minor-role reduction.

III.

Mendez, Linares, and Carcamo assert that the court erred in refusing to apply the safety valve in 18 U.S.C. § 3553(f) based on their convictions under Title 46 and their sentencing under 21 U.S.C. § 960(b).

"We review the district court's interpretation of the relevant sentencing statutes and Sentencing Guidelines de novo." United States v. Anderson, 200 F.3d 1344, 1347 (11th Cir. 2000) (per curiam). We recently held that the safety-valve provision does not apply to Title 46 offenses. United States v. Pertuz-Pertuz, 679 F.3d 1327,  989, 1328-29 (11th Cir. 2012) (per curiam). In Pertuz-Pertuz, the defendant had been convicted of (1) conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a) & (b), and penalized pursuant to 21 U.S.C. § 960(b)(1)(B)(ii); and (2) aiding and abetting the possession with intent to distribute five or more kilograms of cocaine, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a), 18 U.S.C. § 2, and penalized pursuant to § 960(b)(1)(B)(ii). Id. at 1328. We held that, because § 70503 is not included in the five specified offenses under § 3553(f), the safety valve does not apply to defendants convicted under that statute. Id. We rejected the defendant's argument that the reference in Title 46 to § 960 makes the offense an enumerated offense under § 3553(f); instead, we concluded that the

10

safety-valve provision refers to an "offense under" § 960—not to an "offense penalized under" § 960.  Id. at 1328-29.

Mendez, Linares, and Carcamo were convicted of the same crimes and under the same provisions as the defendant in Pertuz-Pertuz.  Because the safety valve does not apply to convictions under Title 46, the district court did not err in denying their request to be sentenced in accordance with § 3553(f).


IV.

Mendez and Carcamo argue that their sentences are procedurally and substantively unreasonable based on a miscalculation of the Guidelines, an alleged failure to consider the factors in 18 U.S.C. § 3553(a), and sentencing disparities with other defendants in unrelated cases.  Linares separately asserts that his sentences are procedurally unreasonable based on a miscalculation of the Guidelines and the district court's alleged failure to consider the § 3553(a) factors.

We review the sentence imposed by the district court for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244-45 (11th Cir. 2005) (per curiam). Furthermore, we review the reasonableness of a sentence under a deferential abuse of discretion standard of review.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  The party challenging the sentence bears the burden of proving

11

the sentence is unreasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam).  Although we do not automatically presume reasonableness for a sentence within the guidelines range, we ordinarily expect such a sentence to be reasonable.  United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

In determining reasonableness, we "evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)."  Talley, 431 F.3d at 788.  In making this determination, we conduct a two-step review, first ensuring that the sentence was procedurally reasonable, and then examining whether the sentence was substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors.  Gall, 552 U.S. at 51, 128 S. Ct. at 597.

To be procedurally reasonable, the district court should have properly calculated the guideline range, treated the Guidelines as advisory, considered the § 3553(a) factors, not considered clearly erroneous facts, and adequately explained the chosen sentence.  Gall, 552 U.S. at 51, 128 S. Ct. at 597.  The district court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments is sufficient, and the court does not need "to state on the record that it has explicitly considered each of the section 3553(a) factors or to discuss each of the section 3553(a) factors."  Talley, 431 F.3d at 786 (quotation omitted).

12

As discussed above, the district court did not miscalculate the guideline range by failing to grant a minor-role reduction or by failing to apply the safety valve. Furthermore, the court acknowledged the § 3553(a) factors during sentencing and stated that it found the sentences sufficient to satisfy those factors. Therefore, we conclude that the sentences of Linares, Carcamo, and Mendez were all procedurally reasonable. As Linares does not challenge the substantive reasonableness of his sentence, we conclude that his sentence was reasonable.

With regard to substantive reasonableness, "[t]he district court has wide discretion to decide whether the section 3553(a) factors justify a variance." United States v. Rodriguez, 628 F.3d 1258, 1264 (11th Cir. 2010), cert. denied, 131 S. Ct. 2166 (2011). "We do not reweigh relevant factors nor do we remand for re-sentencing unless the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence outside the range of reasonable sentences." United States v. Langston, 590 F.3d 1226, 1237 (11th Cir. 2009). When imposing a sentence, the district court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, unwarranted sentencing disparities do not occur between defendants that are not similarly situated. United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009).

13

Mendez and Carcamo failed to show that their sentences were substantively unreasonable, as they did not show that there were sentence disparities with any similarly situated defendants.[1]  Furthermore, we note that Carcamo received the 151-month sentence that he expressly requested during the sentencing hearing, and thus, under the doctrine of invited error, he "may not challenge as error a ruling or other trial proceeding [that he] invited." United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam) (quotation omitted); see United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009) ("The doctrine stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal."). Accordingly, Mendez, Carcamo, and Linares

---

[1]    Carcamo and Mendez raise their deportation argument for the first time on appeal. We review any arguments not raised at the district court only for plain error. United States v. Bennett, 472 F.3d 825, 831 (11th Cir. 2006) (per curiam). This standard requires the defendant to show "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010). With regard to plain error, when the language of the statute or rule does not resolve the issue, "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (per curiam) (quotation omitted).

In an opinion issued prior to United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), we held that a court could not apply a downward departure to shield a defendant from collateral consequences based on the defendant's deportation status. United States v. Maung, 320 F.3d 1305, 1308-10 (11th Cir. 2003). In a post-Booker case, we cited our prior holding in Maung, but declined to determine whether it was still binding precedent after Booker. United States v. Saac, 632 F.3d 1203, 1215 & n.6 (11th Cir. 2011), cert. denied, 132 S. Ct. 139 (2011). Because there is no precedent from the Supreme Court or this Court requiring a district court to consider these collateral consequences, there was no plain error.

14

have failed to show that their sentences are procedurally or substantively unreasonable.

## V.

Ocampo argues separately that his rights under the Confrontation Clause were violated based on a Federal Bureau of Investigation ("FBI") agent's testimony at trial that Ocampo gave a statement regarding his participation in the conspiracy that was essentially the same as Carcamo's statement. Ocampo asserts that the agent's testimony regarding the similarity of the two statements violated his rights under Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968).

We review preserved Bruton claims for abuse of discretion and evaluate any Bruton error for harmlessness beyond a reasonable doubt, meaning that we "ask whether the properly admitted evidence of guilt was so overwhelming, and the prejudicial effect of the co-defendant's statement so insignificant, that beyond any reasonable doubt the improper use of the statement was harmless." United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007) (quotation and alteration omitted).

The Confrontation Clause of the Sixth Amendment provides a defendant in a criminal trial the right "to be confronted with the witnesses against him." and to

15

cross-examine them.  U.S. Const.  amend. VI; see Bruton, 391 U.S. at 126; 88 S. Ct. at 1623.  In Bruton, the Supreme Court held that, in a joint trial, the Confrontation Clause was violated by the admission of "powerfully incriminating extrajudicial statements" of a non-testifying codefendant, despite a curative instruction given to the jury.  391 U.S. at 135-36, 88 S. Ct. at 1628.  In other words, "a defendant's confrontation right is violated when the court admits a codefendant statement that, in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt."  United States v. Schwartz, 541 F.3d 1331, 1351 (11th Cir. 2008).  However, only those statements by a non-testifying codefendant that directly inculpate the defendant give rise to a constitutional violation.  United States v. Arias, 984 F.2d 1139, 1142 (11th Cir. 1993).  "[A]dmission of a codefendant's statement is not error under Bruton where the statement was not incriminating on its face, and became so only when linked with evidence introduced later at trial."  Id. (quotations omitted).

The agent's challenged testimony was not an extrajudicial statement that was subject to Bruton, as it was a statement made by a sworn witness who was subject to cross-examination.  However, even assuming that the challenged testimony did qualify as an extrajudicial statement, Ocampo has not shown that Carcamo's statement directly inculpated Ocampo in the conspiracy.  At no time

16

did the agent testify that Carcamo mentioned Ocampo nor that Carcamo stated that Ocampo knew the drugs were cocaine.  Furthermore, the agent clarified both during direct examination and during Ocampo's cross-examination that Ocampo's statement contained the word "drugs" and not "cocaine."  For the foregoing reasons, we conclude that the agent's testimony that Carcamo and Ocampo's statements were similar did not violate Bruton.[2]

## VI.

Finally, we note that the district court's written judgments each contain scrivener's errors about the statutes under which the defendants were convicted, indicating that each defendant was convicted in Count 1 under Title 42, rather than under Title 46.  Therefore, a remand is necessary for the limited purpose of correcting the written judgments to so reflect.  We remand to the court for the limited purpose of correcting those errors in the judgments.

Upon a thorough review of the entire record on appeal, and after consideration of the parties' briefs, we affirm the convictions and sentences.

**AFFIRMED**, and **REMANDED** with instructions.

---

[2] Even if the admission of the agent's testimony had violated Bruton, any error would be harmless in light of the overwhelming evidence at trial that Ocampo was part of the conspiracy and knew the drugs were cocaine.